# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF STERLING HEIGHTS,

        Petitioner-Appellee,

v

CHRYSLER GROUP, L.L.C.,

        Respondent-Appellant,

and

MICHIGAN STATE TAX COMMISSION,

        Respondent.

FOR PUBLICATION
March 19, 2015

No. 317310
Macomb Circuit Court
LC No. 2013-000125-AA

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

BOONSTRA, J. (*concurring*).

I respectfully concur in the result reached by the majority, as well as in much of its reasoning. I specifically agree with the majority and the trial court that Chrysler Group, L.L.C.'s applications for air pollution control tax exemption certificates should have been evaluated by the Michigan Department of Environmental Quality (MDEQ), and that circuit court therefore properly reversed the decision of the State Tax Commission (STC) to grant Chrysler's applications, and remanded to the MDEQ.

I write separately to explain my somewhat differing reasoning, and to highlight certain concerns. For example, I do not read the pertinent statutes as affording MDEQ or STC *carte blanche* to "pre-approve" facilities based on the Memorandum of Understanding (MOU) that those agencies entered into at the direction of the Legislature, pursuant to Section 311 of Part 2, Article VII, of 2011 PA 63[1] (Section 311), purportedly in the interests of "streamlining" the process for evaluating applications for pollution control tax exemptions. The MOU indeed purports to require MDEQ to "[a]nnually, by June 1, review and submit to the STC the pollution control equipment list commonly approved by the MDEQ for pollution control tax exemptions,"

---

[1] 2011 PA 63 was an omnibus appropriations bill.

and to "[w]hen requested by the STC, assist in the review of a limited number of applications where the equipment is not identified on the annual pollution control equipment list approved by the MDEQ." Further, the MOU purports to require STC to "[a]nnually by July 1, approve a list of air … pollution control equipment determined to be commonly approvable for pollution control tax exemptions by the MDEQ."

However, Section 311—pursuant to which the MOU was adopted—provides in its totality as follows:

> Sec. 311. The [MDEQ] shall enter into a memorandum of understanding with the department of treasury to develop a *process* for the review and approval of tax exemption certificates in accordance with the list of commonly approved air pollution control *equipment adopted by the state tax commission on August 16, 2010*, and the list of commonly approved water pollution equipment adopted by the state tax commission on August 16, 2010. [2011 PA 63, art VII, part 2, § 311 (emphasis added).]

I first note (as a portion of the above italicized language reflects) that Section 311 refers to a specific list in the past tense, i.e., one that was "adopted by the [STC] on August 16, 2010." Nowhere in that statutory language does the Legislature authorize or direct MDEQ or STC to take it upon themselves to create future lists[2] that arguably may then be deemed to constitute pre-approved equipment regardless of the particular factual circumstances.

Second, Section 311 requires MDEQ to enter into an MOU "to develop a *process* for the review and approval of tax exemption certificates" (emphasis added) in accordance with the referenced list. I am unable to read that language as clearly authorizing MDEQ and STC to preapprove equipment for tax exemption without undergoing the otherwise-required statutory evaluation in the particular circumstances presented.

Third, Section 311 refers to the entry into an MOU concerning "commonly approved air pollution control *equipment*" (emphasis added). I am aware of no definition of the term "equipment" that would make it synonymous with the term "facility," as defined in MCL 324.5901. To the contrary, MCL 324.5901 defines "facility" to mean "machinery, *equipment*, structures, or any part or accessories of machinery, *equipment*, or structures," under certain conditions. The Legislature's use of different terms ("equipment" and "facility") in the two statutory provisions and its inclusion within the statutory definition of "facility" (as reflected in MCL 324.5901) of items *other than* "equipment," i.e., "machinery," "structures," and "any part or accessories" of such "machinery" or "structures," demonstrates to me that the Legislature understood the meaning of "equipment" and "facility" to be different, and that the inclusion of the term "equipment" within the definition of "facility" reflects that "equipment" necessarily has a narrower definition than does the overall definition of "facility." See *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d

---

[2] The list provided by the parties on appeal indicates that it was approved by the STC on June 12, 2012.

101 (2009). Consequently, I do not read Section 311, in any event, as directing MDEQ to enter into an MOU relating to "facilities," as defined in MCL 324.5901, but rather as meaning what it says, i.e., an MOU that relates to certain "equipment."[3]

Ultimately, these observations lead me to the same outcome as the majority: the "list" in question is not appropriately used in this case to effect a preapproval of the purported facilities that are the subject of Chrysler's applications.

Further, I find inadequate record evidence that those purported facilities either meet the statutory definition of "facility," in that they were "*installed or acquired for the primary purpose* of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state," MCL 324.5901 (emphasis added), or that they were "*designed and operated primarily for* the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of [MCL 324.5501 *et seq*] and rules promulgated under that part," MCL 324.5903 (emphasis added).[4]

I fully appreciate that there may be a value in "streamlining" processes, and that budgetary restraints may provide added incentive for such streamlining. However, those factors do not excuse agency noncompliance with statutory requirements. The trial court thus properly remanded this matter to the MDEQ for a proper evaluation of whether the statutory requirements of MCL 324.5901 and MCL 324.5903 are met, absent which it would not be appropriate for STC to grant the sought-after air pollution control tax exemption certificates.

/s/ Mark T. Boonstra

---

[3] Neither 2011 PA 63 nor the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*., provides a definition of "equipment," nor has our caselaw defined the term in this context. In such situations, this Court may consult a dictionary to aid in its interpretation. See *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012). The Merriam-Webster Online Dictionary defines "equipment" as "the set of articles or resources serving to equip a person or thing: as (1): the implements used in an operation or activity . . . (2): all the fixed assets *other than land and buildings* of a business enterprise (3): the rolling stock of a railway." See www.merriam-webster.com/dictionary/equipment (last accessed March 6, 2015) (emphasis added). "Equipment" would thus seem not to include a building or structure, or a portion thereof, that nonetheless may constitute a "facility."

[4] Without the requisite MDEQ findings under MCL 324.5903, for example, I am unable to conclude from the current record (as apparently the majority does) that "Chrysler seeks exemption for equipment and parts of structures that either directly contribute to removing pollution from the air or that house equipment that does so" or that "this is not a case in which Chrysler seeks an exemption certificate for a structure that is only indirectly responsible for removing pollution from the air."

-3-